UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RETIREE BENEFIT TRUST OF THE CITY OF BALTIMORE, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>       v.<br><br>MALIBU BOATS, INC., JACK SPRINGER, BRUCE BECKMAN, DAVID BLACK, and WAYNE WILSON,<br><br>                Defendants. | Case No. 1:24-cv-03254-LGS |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

COOLEY LLP
Sarah M. Lightdale
Aric H. Wu
Reed A. Smith
Anne E. Bigler
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
slightdale@cooley.com
ahwu@cooley.com
reed.smith@cooley.com
abigler@cooley.com

Brett De Jarnette (*pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
bdejarnette@cooley.com

December 20, 2024

*Attorneys for Defendants Malibu Boats, Inc., Jack Springer, Bruce Beckman, David Black, and Wayne Wilson*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................ii

TABLE OF ABBREVIATIONS ................................................................................................. v

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.    The AC Fails To Adequately Plead Any False Or Misleading Statement or
         Omission .................................................................................................................. 3

         A.    Plaintiff Fails To Adequately Plead That MBI's Sales Reflected "Excess"
              Sales To Tommy's, Rather Than MBI's Disclosed Sales Strategy......................... 3

         B.    Statements About Demand.................................................................................... 6

         C.    Statements About Dealer Inventory Levels........................................................... 7

         D.    Statements About MBI's Dealer Network .............................................................. 9

    II.    The AC Fails To Plead Facts Giving Rise To A Strong Inference Of Scienter.............. 9

         A.    The AC Does Not Adequately Plead Conscious Misbehavior Or Recklessness .. 10

         B.    Any Inference Of Scienter Is Less Compelling Than The Opposing Inference.... 13

    III.    The AC Fails To Adequately Plead A Scheme Liability Claim ................................... 14

    IV.    The AC Fails To Adequately Plead Loss Causation..................................................... 14

CONCLUSION............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely v. Aterna Zentaris Inc.*,
2013 WL 2399869 (S.D.N.Y. May 29, 2013) ...........................................................................7

*In re Advanced Battery Techs. Inc.*,
781 F. 3d 638 (2d Cir. 2015).................................................................................................10

*Amorosa v. Gen. Elec. Co.*,
2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ........................................................................4

*In re AppHarvest Sec. Litig.*,
684 F. Supp. 3d 201 (S.D.N.Y. 2023).....................................................................................15

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020).....................................................................................14

*In re BioLineRx Ltd. Sec. Litig.*,
2024 WL 3409800 (D.N.J. July 15, 2024)................................................................................5

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017)......................................................................................11

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
658 F. Supp. 3d 220 (S.D.N.Y. 2023).........................................................................3, 10, 12

*In re Canopy Growth Sec. Litig.*,
2024 WL 3445436 (S.D.N.Y. Jul. 17, 2024) ..........................................................................12

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ........................................................................15

*In re Cyberonics Inc. Sec. Litig.*,
523 F. Supp. 2d 547 (S.D. Tex. 2007) ....................................................................................13

*Diabat v. Credit Suisse Grp. AG*,
2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024).........................................................................15

*Emps' Ret. Sys. of Gov't of the V.I. v. Blanford*,
794 F.3d 297 (2d Cir. 2015)......................................................................................................8

*Gavish v. Revlon, Inc.*,
2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004).......................................................................4, 6

*In re Gen. Elec. Co. Sec. Litig.*,
857 F. Supp. 2d 367 (S.D.N.Y. 2012).....................................................................................12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Hain Celestial Grp. Inc., Sec. Litig.*,
    2022 WL 18859055 (E.D.N.Y. Nov. 4, 2022)........................................................................13

*Hawes v. Argo Blockchain plc*,
    2024 WL 4451967 (S.D.N.Y. Oct. 9, 2024) .............................................................................9

*In re Jiangbo Pharms., Inc., Sec. Litig.*,
    884 F. Supp. 2d 1243 (S.D. Fla. 2012) ...................................................................................13

*Manson v. Muller*,
    1995 WL 782176 (N.D. Cal. Oct. 12, 1995).............................................................................8

*Martin v. GNC Holdings, Inc.*,
    2017 WL 3974002 (W.D. Pa. Sept. 8, 2017)...........................................................................15

*Menora Mivtachim Ins. v. Int'l Flavors & Fragrances Inc.*,
    2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ...................................................................11, 14

*Messner v. USA Techs., Inc.*,
    2016 WL 1466543 (E.D. Pa. Apr. 13, 2016)...........................................................................13

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ..............................................................................................15

*In re Mylan N.V. Sec. Litig.*,
    2020 WL 1673811 (S.D.N.Y. Apr. 6, 2020)............................................................................14

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
    877 F.3d 687 (6th Cir. 2017) ..................................................................................................15

*Ortiz v. Canopy Growth Corp.*,
    537 F. Supp. 3d 621 (D.N.J. 2021) ...........................................................................................8

*Pollio v. MF Glob., Ltd.*,
    608 F. Supp. 2d 564 (S.D.N.Y. 2009)........................................................................................8

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)........................................................................................11

*Reilly v. U.S. Physical Therapy, Inc.*,
    2018 WL 3559089 (S.D.N.Y. July 23, 2018) ..........................................................................10

*In re Salix Pharms., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)..........................................................................12

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*,
    2024 WL 1898512 (S.D.N.Y. May 1, 2024) ...........................................................10

*Scott v. Gen. Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014)........................................................................8

*SEC v. Farnsworth*,
    692 F. Supp. 3d 157 (S.D.N.Y. 2023)......................................................................14

*In re SolarEdge Tech. Sec. Litig.*,
    2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) ............................................................4

*In re Synchrony Fin. Sec. Litig.*,
    988 F.3d 157 (2d Cir. 2021).....................................................................................7

*In re Take–Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008).......................................................................15

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011).......................................................................12

*Wyche v. Advanced Drainage Sys. Inc.*,
    710 F. App'x 471 (2d Cir. 2017) ..............................................................................10

*In re XL Fleet Corp. Sec. Litig.*,
    2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)..............................................................14

**Rules and Regulations**

Fed. R Civ. P. 9(b) ...............................................................................................................1, 4

17 C.F.R. § 240.10b-5(a) ....................................................................................................14

17 C.F.R. § 240.10b-5(c) ....................................................................................................14

iv

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| **AC** | Plaintiff's Amended Complaint (Dkt. 43) |
| **¶ __** | Paragraph of the Amended Complaint |
| **Class Period** | Plaintiff's proposed class period of November 4, 2022 to May 1, 2024 |
| **Bankr. Pr.** | Proceedings in the chapter 11 bankruptcy cases jointly administered under the caption *In re Tommy's Fort Worth LLC*, No 24-90000-elm11, (Bankr. N.D. Tex.) |
| **Borisch Compl.** | Action under the caption *Borisch v. Malibu Boats Inc.,* No. 3:24-cv-00339 (E.D. Tenn.), ECF 1 |
| **Borisch Decl.** | Declaration of Matthew Borisch in Support of Debtors' Emergency Motion to Enforce Automatic Stay Against Malibu Boats, Inc. and Malibu Boats LLC, Bankr. Pr., ECF No. 113 |
| **Br.** | Defendants' Memorandum of Law in Support of their Motion to Dismiss, dated November 8, 2024 (Dkt. 52) |
| **Company or MBI** | Malibu Boats, Inc. |
| **Defendants** | Malibu Boats, Inc., Jack Springer, Wayne Wilson, David Black, and Bruce Beckman |
| **Ex. __** | Exhibit to the Declaration of Sarah M. Lightdale, dated Nov. 8, 2024 (Dkt. 51) |
| **Exchange Act** | Securities Exchange Act of 1934, as amended |
| **Individual Defendants** | Jack Springer, Wayne Wilson, David Black, and Bruce Beckman |
| **OneWater** | OneWater Marine Inc. |
| **Opp.** | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated Dec. 6, 2024 (Dkt. 55) |
| **Plaintiff** | Lead Plaintiff Retiree Benefit Trust of The City of Baltimore |
| **PSLRA** | Private Securities Litigation Reform Act of 1995, as amended |
| **Tommy's** | 15 boat dealerships owned by Matthew Borisch |
| **Tommy's Action** | Dismissed action under the caption *Tommy's Castaic, LLC v. Malibu Boats Inc.,* No. 3:24-cv-00166 (E.D. Tenn.) |
| **Tommy's Compl.** | Dismissed Complaint in the Tommy's Action, ECF 1 |
| **FY** | Fiscal Year (July 1 to June 30 for MBI) |
| **FY 2023** | Fiscal Year 2023 (July 1, 2022 to June 30, 2023 for MBI) |
| **FY 2024** | Fiscal Year 2024 (July 1, 2023 to June 30, 2024 for MBI) |

v

**INTRODUCTION**

Plaintiff's opposition underscores that the Amended Complaint should be dismissed with prejudice. ***Before*** the putative Class Period, MBI disclosed that it expected an ***almost 10% decrease*** in retail demand in FY 2023, and that its strategy to grow revenues in FY 2023 was to ***increase*** depleted dealer inventory to pre-pandemic levels. *See* Br. 4-5. In other words, MBI disclosed that in FY 2023 it planned to sell more boats to dealers than they would be able to immediately sell to customers. *Id.* Then, when dealer inventory levels of Malibu segment boats rose faster than anticipated in the second half of FY 2023, MBI disclosed that inventory levels were higher than ideal and projected that FY 2024 revenue could decrease by $250 million. *Id.* 6-8. All of these sobering and transparent disclosures were made ***before*** any alleged corrective disclosure, and they belie Plaintiff's contentions that MBI misled the market "[t]hroughout the Class Period" about "demand for MBI's boats," Opp. 17, or that MBI was "precisely 'matching' inventory to demand," Opp. 20.

The AC fails to plausibly allege, much less allege with the particularity required by Rule 9(b) and the PSLRA, that MBI's sales reflected undisclosed "excess" sales to Tommy's, as opposed to MBI's fully-disclosed sales strategy to rebuild channel inventory from historic lows to pre-pandemic levels. The AC fails, for example, to allege what Tommy's normalized, pre-pandemic inventory levels were, by how much MBI's sales to Tommy's exceeded those levels (if at all), and the impact on MBI's financial results (if any). None of the cases Plaintiff cites hold that a securities fraud complaint lacking such foundational facts can be legally sufficient. As a result, Plaintiff resorts to impermissible hindsight pleading, fixating on Tommy's having $100 million of unsold boats after it filed for bankruptcy in May 2024, ¶ 111, as "evidence" of an MBI plan to "pump" Tommy's full of excess inventory starting in July 2022, before the Class Period even started. Opp. 29.

Although MBI did not make granular statements about the inventory levels of any of its 400 dealers, Plaintiff claims that virtually every statement MBI made during the 18-month Class Period was false without disclosure that MBI sold Tommy's "excess" inventory. In May 2024, Matthew Borisch, Tommy's owner, submitted a declaration in support of a bankruptcy court motion which sought (and failed) to enjoin MBI from doing business with other dealers in Tommy's former territories. Plaintiff contends there is a "plethora of facts revealed in Borisch's court filings" showing that MBI "stuffed" Tommy's with "staggering amounts of inventory" that "Tommy's did not want." Opp. 2, 5. But the **only** facts about inventory levels in the Borisch Declaration, which Plaintiff does not dispute is incorporated into the AC by reference, *see, e.g.,* Opp. 21 & nn.10-11, show just the opposite. In FY 2023, ***Tommy's ordered <u>hundreds more boats</u> than MBI manufactured (1,617 ordered compared to 1,158 manufactured (slotted))***:

Case 24-90000-elm11    Doc 113    Filed 06/04/24    Entered 06/04/24 13:39:58    Desc
Main Document        Page 12 of 21

| Summary of Boats Requested v. Boats Slotted | | |
|---|---|---|
| | # Boats Requested by Tommys | #of Boats Slotted |
| Jul-22 | 74 | 66 |
| Aug-22 | 107 | 105 |
| Sep-22 | 164 | 91 |
| Oct-22 | 168 | 67 |
| Nov-22 | 157 | 143 |
| Dec-22 | 165 | 114 |
| Jan-23 | 100 | 15 |
| Feb-23 | 114 | 31 |
| Mar-23 | 141 | 146 |
| Apr-23 | 146 | 125 |
| May-23 | 164 | 164 |
| Jun-23 | 117 | 91 |
| | 1617 | 1158 |

Borisch Decl. ¶ 25; s*ee also* Br. 11-12, 16.

Forced to admit that MBI "failed to deliver the boats Tommy's requested," Plaintiff argues as a fallback that MBI "pushed excess" Malibu-brand boats on to Tommy's, while delivering fewer

2

lower-priced Axis boats than Tommy's ordered. Opp. 23. In addition to being unsupported by the

AC, Plaintiff's fallback argument is unsupported by the Borisch Declaration, which shows that

***Tommy's ordered more of both Malibu and Axis boats than MBI manufactured***.

| September 2022 Requested v. Slotted (Malibu - Axis Mix) | | | | |
|---|---|---|---|---|
| | # Requested by Tommys | | # Slotted by Malibu | |
| Malibu Boats | 90 | 55% | 55 | 60% |
| Axis Boats | 74 | 45% | 36 | 40% |
| Total | 164 | 100% | 91 | 100% |

| February 2023 Requested v. Slotted (Malibu - Axis Mix) | | | | |
|---|---|---|---|---|
| | # Requested by Tommys | | # Slotted by Malibu | |
| Malibu Boats | 38 | 33% | 18 | 58% |
| Axis Boats | 76 | 67% | 13 | 42% |
| Total | 114 | 100% | 31 | 100% |

Borisch Decl. ¶ 33.

Plaintiff's attempt to contrive a securities fraud claim based on *post hoc* characterizations

of Borisch's business dispute with MBI fails. The AC should be dismissed with prejudice.

## ARGUMENT

### I.    The AC Fails To Adequately Plead Any False Or Misleading Statement or Omission

Plaintiff has not come close to pleading contemporaneous facts that "demonstrate with

specificity why and how" each challenged statement was false "*at the time it was made.*" *In re*

*Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 230 (S.D.N.Y. 2023) (cleaned up).

#### A.    Plaintiff Fails To Adequately Plead That MBI's Sales Reflected "Excess" Sales To Tommy's, Rather Than MBI's Disclosed Sales Strategy

Plaintiff contends that every challenged statement during the 18-month Class Period was

false without disclosure that MBI "stuffed" Tommy's with "excess" inventory, but the AC fails to

even plead what "excess" inventory means. MBI told the market its sales strategy for FY 2023

was to return dealer inventory to normal pre-pandemic levels. Br. 4-5. The AC fails to allege what

those normal inventory levels were or how Tommy's inventory compared to them when each

challenged statement was made. As *Gavish v. Revlon, Inc.,* 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004) illustrates, that lack of factual particularity is fatal. In *Gavish*, plaintiff alleged Revlon misled investors by failing to disclose it sold Safeway far more makeup products than Safeway could sell. *Id.* *3. Based on Second Circuit "guidance" regarding the level of specificity required to plead a claim based on channel stuffing, including "alleged declines in sales as of specific dates ... in terms of percentage and ... in terms of quantity," the *Gavish* complaint was dismissed because it "fail[ed] to grapple with Revlon's aggregate reported quarterly sales or any measure of sell-through." *Id*.

Plaintiff argues that *Gavish* involved "general allegations that inventory at retailers was too high," Opp. 18, n.7, but fails to explain how this case is different. Like in *Gavish*, Plaintiff fails to grapple with any measure of shipment, request, order, commitment, inventory levels, or sell through information. Plaintiff relies on Borisch's "averments" that Tommy's inventory was "too high," Opp. 23, but those "averments" are conclusory, *post hoc* statements, based on inventory Tommy's was unable to sell, not the specific facts required under Rule 9(b) and the PSLRA to show MBI's statements were false when made. *See Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, *3 (S.D.N.Y. Aug. 19, 2022) ("[B]ecause [the] Amended Complaint … alleges no non-conclusory facts that support the truth of these secondhand allegations [from an SEC Order and another civil complaint], [a]llowing plaintiff[] to rely on them is impermissible under Rule 9(b).") (cleaned up).

Plaintiff relies on conclusory allegations of "forced" sales to Tommy's, Opp. 18, but *In re SolarEdge Tech. Sec. Litig.,* 2024 WL 4979296 (S.D.N.Y. Dec. 4, 2024) highlights the inadequacy of those allegations. In *SolarEdge*, the plaintiff provided specific factual details from eight former employees showing that the company met its quarterly revenue targets through a companywide practice of shipping products before request, "forcing distributors to take delivery," and refusing to accept returns or cancel orders. *Id.* *2-3, *7-8. There are no allegations MBI shipped Tommy's boats earlier than requested or refused to cancel orders when Tommy's asked. Nor are there any

4

allegations of a companywide practice to manipulate revenue or force dealers to take boats. To the contrary, the ***only*** non-conclusory facts about Tommy's orders here show that Tommy's ordered hundreds more boats in FY 2023 than MBI manufactured. *See* Br. 11-12; Borisch Decl. ¶¶ 25, 33.

In contending that MBI "forced" Tommy's to take inventory "it did not ask for or need," Opp. 16, 18-20, Plaintiff ignores (i) its own allegation that "before the parties could execute new dealership agreements, they had to reach agreement on the number of boats Tommy's would commit to ordering from MBI for the year," ¶ 63; and (ii) that *before* the Class Period, Tommy's committed to purchasing 1,234 boats for FY 2023. Borisch Decl. ¶ 23. To plausibly support its contention that MBI "stuffed" Tommy's with inventory, Plaintiff would need to allege facts showing that the 1,234-boat commitment in 2022 was "forced" and exceeded what Tommy's asked for or needed.[1] But the AC pleads no facts regarding how the 1,234-boat commitment was determined or agreed to, much less facts showing MBI knew it would create "excess" inventory.[2]

Plaintiff attempts to rely on an anecdote from the dismissed Tommy's complaint regarding a July 2022 meeting where Springer allegedly insisted that Tommy's increase its "floor plan" credit facility. Opp. 11, 22. But Plaintiff does not dispute that between July 1, 2020 and June 30, 2022, the number of Tommy's dealerships grew from seven to 15, Borisch Decl. ¶ 23, and that a return to pre-pandemic inventory levels would mean dealers carrying more inventory, Ex. 5 at 8, and therefore using more credit. Nor does Plaintiff explain why the alleged July 2022 discussion of Tommy's credit capacity means that MBI forced Tommy's to buy "excess" boats, especially when there is no allegation that Springer and Borisch even discussed boat commitments at the July 2022 meeting. *See In re BioLineRx Ltd. Sec. Litig.*, 2024 WL 3409800, *10 (D.N.J. July 15, 2024)

---

[1] The AC fails to address how MBI "pumped" Tommy's with $50 million of boats in May and June 2023, Opp. 12, when (i) Tommy's agreed to FY 2023 boat commitments in 2022, ¶ 63; and (ii) the AC pleads no facts showing that those $50 million in boats exceeded Tommy's FY 2023 commitments.

[2] Plaintiff makes no attempt to explain how a purported February 2024 conversation between Borisch and "three Malibu stakeholders," Opp. 22, n.13, had any bearing on Tommy's 2022 commitment to buy 1,234 boats for FY 2023.

5

("[A]n implied assumption without adequate supporting underlying facts is insufficient …").[3]

Plaintiff resorts to hindsight when it argues that 800 unsold boats in June 2023, Opp. 23, and "$100 million in unsold inventory" in July 2024, ¶ 111, reflects an MBI plan to "pump" Tommy's starting in July 2022. Opp. 23, 29. Moreover, channel stuffing is not sufficiently pled just because "retailers found themselves carrying substantially more inventory than was commercially necessary." *Gavish,* 2004 WL 2210269, *18. That admonition is particularly apt here where Tommy's ordered more boats than MBI provided in FY 2023, Borisch Decl. ¶ 25, the AC does not allege how 800 unsold boats in June 2023 compared to expectations, or "normal" levels, and MBI reported a "weaken[ed]" retail environment in FY 2024, Ex. 11 at 6; ¶ 106.

### B.    Statements About Demand

Plaintiff contends MBI misled investors that "demand for MBI's boats remained strong," Opp. 17, with statements (i) in a November 2022 1Q 2023 call about customers "gobbling it up like … deep fried turkey" and "optimism and almost the demand to get more boats" in dealer meetings, Ex. 5 at 6, 8; and (ii) in a February 2023 2Q 2023 call about "the retail environment remain[ing] resilient with strong demand carrying the tide for our premium boats." ¶¶ 123-25.

Rather than identify contemporaneous facts contradicting these statements, Plaintiff relies on events post-dating the statements. For example, Plaintiff claims there was a "drop-off" in boat registrations in "early 2023," Opp. 30, a time period that is not addressed in either the November 2022 statements or the February 2023 statement concerning 2Q 2023 (*i.e.*, October to December 2022). Similarly, Plaintiff does not contend that OneWater cancelled orders until "early 2023," *id*., or that Tommy's had $100 million in unsold inventory until July 2024, ¶ 111. And the only boat

---

[3] The AC also fails to plead contemporaneous facts showing that MBI "pushed excess" Malibu boats on to Tommy's, while delivering fewer lower-priced Axis boats. Opp. 23. The AC does not provide the quantities of Malibu and Axis boats delivered at the time of any challenged statement, and the only inventory-mix facts in the Borisch Declaration show that Tommy's ordered more of both Malibu and Axis boats than MBI manufactured. Borisch Decl. ¶ 33.

6

shipment data or figures in the AC's source documents show that Tommy's ordered 1,049 boats through February 2023, but MBI had only manufactured 632. Borisch Decl. ¶ 25.

Plaintiff also ignores MBI's other disclosures, which provide relevant context showing that the challenged statements could not have misled investors. For example, Springer's February 2023 statement that we "see no worsening of our expected outlook" referred to a prior projection that retail demand would be "*down* [a] high-single digit percentage" in FY 2023. Ex. 3 at 11. Plaintiff claims there was a "drop-off" in retail demand in early 2023; MBI disclosed that there was "lower retail in May and June" and that "retail activity at our dealers trended lower during fiscal year 2023."[4]  Ex. 10 at 6; Ex. 9 at 34. Plaintiff does not attempt to explain how MBI's investors were misled about demand in light of these disclosures.  *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) ("[Plaintiff] may not cherry pick certain public statements for its complaint and divorce them from the universe of disclosed information to plausibly allege fraud.").[5]

### C.    <u>Statements About Dealer Inventory Levels</u>

MBI never represented it was "precisely 'matching' dealer inventory to retail demand," which is why Plaintiff only uses quote marks around the word "matching." Opp. 1, 20. Instead, MBI used the term "match" in the context of explaining its *production* levels and why it was projecting decreased revenues. For example, on an August 29, 2023 call, MBI projected FY 2024 revenue would *decrease*. Ex. 10 at 7. Springer explained that dealers normalized to pre-pandemic inventory levels faster than anticipated, prompting MBI to slow Malibu segment production "to match where channel inventories were," which would decrease revenues. *Id.* at 4; *see also* Ex. 11

---

[4] Contrary to Plaintiff's contention that MBI reassured the market it was "insulated" from any "downturn," Opp. 1, MBI disclosed it was impacted by the "retail environment markedly deteriorat[ing]" and a "challeng[ing] interest rate and macroeconomic landscape." Ex. 11 at 12. Statements about "premium buyers," Opp. 18, merely conveyed that 50% of premium buyers purchased with cash, rather than loans, ¶ 138, whereas sellers of "smaller aluminum boats" were "most stressed" because their buyers primarily purchased with loans impacted by interest rates. ¶ 155.

[5] Plaintiff fails to address how MBI's statements about aggregate demand were misleading without granular information about Tommy's. *See* Br. 23-25; *Abely v. Aterna Zentaris Inc.*, 2013 WL 2399869, *11-12 (S.D.N.Y. May 29, 2013) (companies may "report cumulative figures instead of … subcategories of data").

at 6. Thus, MBI's "matching" statements referred to slowing production, not "precisely 'matching' dealer inventory to retail demand." *See Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 573 (S.D.N.Y. 2009) ("A court cannot evaluate alleged misleading statements in a vacuum, however, but instead 'in light of the circumstances under which they were made.'").

Further, Plaintiff does not credibly address how MBI could have misled investors in light of its August and October 2023 disclosures, preceding the first alleged corrective disclosure, that inventory levels were higher than ideal. *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 397 (S.D.N.Y. 2014) (dismissal where company "disclosed its increasing inventories"); *Manson v. Muller*, 1995 WL 782176, *1 (N.D. Cal. Oct. 12, 1995) (same). In August 2023, after a soft summer sales season, MBI reported "current inventory levels at our Malibu and Cobalt dealers have returned to pre-pandemic levels," Ex. 9 at 34, and that dealers were facing "higher inventory levels," higher carrying costs, and a weak retail environment, leading MBI to forecast declining wholesale sales.[6] Ex. 10 at 5. In October 2023, Springer stated: "Channel inventories across our brands are now back to or above pre-COVID levels," and "given the current environment, I think it is a tad below [ ] pre-COVID levels would be the right amount of inventory." Ex. 11 at 4, 10.[7]

Plaintiff contends MBI should have disclosed that dealers had five weeks more inventory on hand than MBI wanted, as Springer did in January 2024, ¶¶ 84, 87, or that inventory levels were "stubbornly high," Opp. 24, as Springer did in May 2024. ¶ 106. That is "impermissible" hindsight pleading. *Hawes v. Argo Blockchain plc*, 2024 WL 4451967, *3 (S.D.N.Y. Oct. 9, 2024).

---

[6] Plaintiff does not explain how these August 2023 disclosures were inconsistent with alleged statements by CW 3, a salesperson at a Tommy's dealership in Colorado, that, in June and July 2023, the dealership had more boats in inventory than it usually had at FY end, and that he sold less boats than he typically sold in those months. ¶¶ 65, 67.

[7] In contrast to MBI, which disclosed both its strategy to grow revenues by rebuilding dealer inventory and when inventory levels became higher than ideal, Ex. 3 at 11; Ex. 9 at 34, the defendants in *Emps' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297 (2d Cir. 2015) and *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621 (D.N.J. 2021) affirmatively stated they did not have excess inventory, while concealing substantial inventory buildups.

### D.      Statements About MBI's Dealer Network

Plaintiff avers that "dealer network" statements "were misleading in light of Tommy's precarious financial situation," Opp. 25, but the AC fails to allege what Tommy's financial statements showed at any point in time, let alone that MBI had access to Tommy's financial data. Plaintiff resorts to a sleight-of-hand when it argues that a September 23, 2023 statement was rendered misleading by not disclosing that Tommy's was "in dire financial condition." Opp. 25. Plaintiff contends that, "[i]n August 2023, Borisch informed *Springer himself* that Tommy's was in a '*dire financial position*.'" Opp. 29. What Borisch actually alleges is that Tommy's was in a dire financial position by August 2023 and that at some unspecified point in time Borisch asked MBI "to step in and help." Borisch Compl. ¶ 6. There is no allegation in Borisch's complaint that he ever informed Springer that Tommy's was in a "dire financial position," and the AC admits that it was not until September 2023 that "Tommy's reached out to MBI" and MBI learned Tommy's had sold out of trust. ¶ 186. Moreover, after Springer emailed on September 11, 2023 that "no dealer agreement can be or will be signed" until "Tommy's is in good standing with M&T," ¶ 169, Tommy's "work[ed] with M&T to resolve the SOT and in October 2023, M&T sent confirmation" it was resolved. Borisch Decl. ¶ 13. Foreclosing any inference MBI believed Tommy's was going out of business, MBI resumed negotiating Tommy's dealer agreements in October 2023. *Id.* ¶ 14.[8]

## II.      The AC Fails To Plead Facts Giving Rise To A Strong Inference Of Scienter

Plaintiff admits that Black, Beckman, and Wilson were not eligible for bonuses, *compare* Br. 28 and ¶ 114 n.7, *with* Opp. 28-33, and thus could not have been motivated to "meet revenue targets that were a prerequisite for them to earn maximum bonus compensation." ¶ 114. Plaintiff makes no attempt to address the Second Circuit authority holding that "[b]onus compensation is

---

[8] Plaintiff erroneously claims that a March 5, 2024 statement, in which Springer stated that Wells Fargo was a "key partner" with whom MBI shared dealer health information, ¶ 180, was rendered misleading without disclosing that "Tommy's had defaulted on its financing." Opp. 26. That statement did not discuss Tommy's or represent that all of MBI's 400 dealers were healthy. Moreover, the AC fails to plead any facts showing that Tommy's informed MBI, or that MBI otherwise learned about, the default before the March 5, 2024 statement. *See* Br. 23.

not the type of 'concrete and personal' benefit upon which a finding of motive to commit securities fraud can be based," *Wyche v. Advanced Drainage Sys. Inc.*, 710 F. App'x 471, 473 (2d Cir. 2017), *compare* Br. 28, *with* Opp. 28-33; and does not dispute that Springer's bonus was discretionary. *See Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, *7, *12-13 (S.D.N.Y. July 23, 2018) (no inference of scienter from discretionary bonus awards).[9]

### A.      The AC Does Not Adequately Plead Conscious Misbehavior Or Recklessness

Absent motive, a plaintiff must plead "correspondingly greater" allegations of conscious misbehavior or recklessness, *In re Advanced Battery Techs. Inc.*, 781 F. 3d 638, 644 (2d Cir. 2015), and must raise a strong inference of scienter "with respect to each defendant and with respect to each act or omission alleged to" constitute securities fraud. *Bristol-Myers*, 658 F. Supp. 3d at 230.

As to Black and Beckman, who held their positions for a limited time later in the Class Period, Plaintiff offers no substantive arguments at all. *Compare* Br. 29, *with* Opp. 28-33 (not referencing Black) and n.25 (referring to Beckman's post-Class Period statement in May 2024, ¶ 189, without explaining how it raises any inference of scienter). As to Wilson, Plaintiff concedes MBI reported "reduced wholesale restocking demand" in the Malibu segment for 3Q 2023, *see* Br. 29; Ex. 6 at 2, and fails to identify any facts showing the falsity of Wilson's February 7, 2023 statement that increased net sales and unit volumes in 2Q 2023 were "generated by resilient wholesale demand across all 3 segments." *Compare* Br. 29-30, *with* Opp. 28-33.

---

[9] *San Antonio Fire and Police Pension Fund v. Dentsply Sirona Inc.*, 2024 WL 1898512 (S.D.N.Y. May 1, 2024) dealt with the "sliding-scale" rule that the pleading burden is greater where a complaint fails to allege a cognizable motive. In *Dentsply*, the defendant company issued a restatement that showed inflated revenues had been "critical" to the individual defendants' bonuses, enabling the company to "just barely" make margin and earnings targets by 0.3% and 0.5%, thus triggering defendants' rights to an additional "several million dollars." *Id.* *2-3, *7; *Dentsply* Am. Compl. ¶¶ 221, 224, No. 1:22-cv-06339, ECF 72. The court concluded those facts were sufficiently probative that the sliding-scale did not apply. 2024 WL 1898512, *7. Here, there is no restatement showing the amounts by which financial metrics were inflated, and the performance targets were exceeded by a comfortable 2-3%, ¶ 117, not a mere fraction of a percent. Thus, unlike in *Dentsply*, Plaintiff here has not adequately pled facts probative of motive, and its other allegations of scienter must be not just "strong," but "extraordinar[ily]" strong. *Dentsply*, 2024 WL1898512, *7.

Instead of identifying facts in the AC evidencing scienter, Plaintiff simply avers that "Defendants—and especially Springer and Wilson—personally directed MBI's channel stuffing scheme." Opp. 29; *compare* ¶ 183. But the AC alleges no facts showing either believed that Tommy's FY 2023 commitments, agreed to *before* the Class Period began, would result in "excess" inventory, or what either believed were appropriate inventory levels, or how Tommy's inventory compared to those levels when each challenged statement was made. Moreover, the very source materials on which the AC relies undermine any inference of scienter. Borisch Decl. ¶¶ 25, 33.[10] It is not plausible that Springer and Wilson believed they were channel-stuffing when Tommy's was requesting more boats than delivered, and MBI was not shipping early or refusing to cancel orders. Without particularized facts to show any Defendant knew information contradicting their challenged statements, Plaintiff resorts to generalized theories that, individually or collectively, fail to support even a plausible, much less a strong, inference of scienter.

***Alleged OneWater Cancellations.*** Plaintiff fails to address the case law rejecting hearsay from a CW who did "not have direct personal knowledge of the state of mind of any [defendant]," *Menora Mivtachim Ins. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, *25 (S.D.N.Y. Mar. 30, 2021), and does not dispute that CW 1 did not attend any meetings between Springer and OneWater's CEO, and cannot even approximate how many orders OneWater's CEO supposedly asked Springer to cancel at a February 2023 meeting. *See* Br. 21-22. There is also no inconsistency between OneWater's alleged cancellation of Malibu segment orders in February 2023 and MBI's disclosures. Indeed, in announcing its 3Q 2023 results (*i.e.*, for January to March 2023), MBI disclosed *a slowdown in the Malibu segment* specifically. *See* Br. 6.

---

[10] *See Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("If these [source] documents contradict the allegations of the amended complaint, the documents control …"). By contrast, in *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731 (S.D.N.Y. 2017), a strong inference of scienter arose from a full government investigation, court testimony, and criminal convictions and prison sentences. *Id.* 742-43, 764-65.

11

***Core Operations Doctrine.*** Plaintiff does not dispute that "[i]t is far from clear that the core operations doctrine remains valid in light of the PSLRA," *Bristol-Myers*, 658 F. Supp. 3d at 234, and that the doctrine cannot independently create a strong inference of scienter. *See* Br. 32. Nonetheless, Plaintiff twists itself in a pretzel trying to invoke the doctrine. Plaintiff asserts that "Defendants' fraud" extended to "OneWater," Opp. 31, but the AC alleges only that OneWater cancelled some unquantified number of orders in February 2023, ¶ 185, not that MBI "stuffed" OneWater with boats it did not request. And rather than dispute that Tommy's was "not essential to the survival" of MBI, *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343-44 (S.D.N.Y. 2011), Plaintiff professes it is somehow "irrelevant," Opp. 31, because Tommy's accounted for "23.3% of net sales for the Malibu Segment." ¶ 193. Even if the doctrine were still valid, core operations must be assessed at a company-wide level and not, as Plaintiff tries here, at a business segment level. *See, e.g.*, *In re Canopy Growth Sec. Litig.*, 2024 WL 3445436, *15 (S.D.N.Y. Jul. 17, 2024).

***Access to and Monitoring of Data.*** Plaintiff purports to rely on CW 2 who allegedly recalled "a decline in boat registrations" in early 2023, ¶¶ 46-47, but fails to show any inconsistency with MBI's disclosures. This is a glaring deficiency when MBI cautioned investors in August 2022 that it expected retail demand to fall nearly 10% in FY 2023, and disclosed a slowdown in the Malibu segment in its results for 3Q (*i.e.*, January to March) and 4Q (*i.e.*, April to June) 2023.[11] *See* Br. 5-7. Plaintiff otherwise merely presumes there was unspecified data "contradicting" unspecified challenged statements, Opp. 30, which is insufficient.

***Springer's Resignation.*** Raymond James only expressed surprise at the February 2024 announcement of Springer's resignation because it "had just met with Mr. Springer . . . last week,"

---

[11] By contrast, in the cases Plaintiff cites, the complaints identified a specific contradiction between a challenged statement and information available at the time of the statement. *See, e.g.*, *In re Salix Pharms., Ltd.*, 2016 WL 1629341, *14 (S.D.N.Y. Apr. 22, 2016) (strong inference based on "the ease with which potential acquirer's discovered Salix's true inventory levels" after "accessing the company's electronic data room," which included "non-public reports" that reflected "Salix's true inventory numbers"); *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 386-87, 395-96 (S.D.N.Y. 2012) (defendant described quality of loan portfolio as "fantastic" when "at least $145 billion of its $230 billion commercial lending and leasing portfolio consisted of loans to non-investment grade companies").

not because of Tommy's, and, far from speculating about fraud, noted MBI's own "reduction in FY24 guidance in late January." ¶ 93. Rather than terminate their relationship, MBI and Springer agreed that Springer would serve as a consultant for two years with the right to extend for two more years. Ex. 14 at 1. That undermines any inference of fraud. *See Messner v. USA Techs., Inc.*, 2016 WL 1466543, *1 (E.D. Pa. Apr. 13, 2016) (no inference where executive retained as consultant); *In re Jiangbo Pharms., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1263 (S.D. Fla. 2012) (same); *In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547, 553-54 (S.D. Tex. 2007) (same).

**B.**     **Any Inference Of Scienter Is Less Compelling Than The Opposing Inference**

Plaintiff's far-fetched theory is that the four Individual Defendants devised a scheme to "pump" and "stuff" MBI's purportedly "most important" dealer with boats, forced the dealer out of business, and hurt MBI, so that one of them would have a contingent chance to get a bonus bump that he never received. The far more compelling inference is that Tommy's and Borisch have sought to scapegoat MBI for their own debt and burden mismanagement. Tommy's and MBI agreed to FY 2023 boat commitments in 2022—before the Class Period even started—with a plan to rebuild inventory to pre-pandemic levels. Throughout the Class Period, MBI told investors it was executing against its "channel inventory opportunity" strategy and disclosed when inventory normalized faster than anticipated. Amid an industry downturn in 2023 and 2024, Tommy's could not sell as many boats as expected, defaulted with its lender, and then attempted to blame MBI. Plaintiff now attempts to turn that business dispute into a securities fraud claim, but relies on hindsight and a theory undermined by the AC's source documents. *See In re Hain Celestial Grp. Inc., Sec. Litig.*, 2022 WL 18859055, *33 (E.D.N.Y. Nov. 4, 2022) (dismissing complaint based on alleged channel stuffing because non-culpable inference more compelling).

13

### III.    The AC Fails To Adequately Plead A Scheme Liability Claim

Plaintiff does not dispute that a scheme liability claim requires "something *beyond* misstatements and omissions," *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir.2022)—*i.e.*, "inherently deceptive conduct" that violates Rule 10b-5(a) or (c), *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 534 (S.D.N.Y. 2020). "[T]o state a claim under Rule 10b-5(a) or (c)," a plaintiff must allege conduct that is not only "inherently deceptive," but also "affected the market for securities or was otherwise in connection with [the plaintiff's] purchase or sale" of securities. *Menora.*, 2021 WL 1199035, *8. MBI's alleged sharp-elbowed business dealings with Tommy's, Opp. 35, are not "inherently deceptive" acts[12] or conduct that concerned, much less affected, MBI's securities, and Plaintiff's allegation that MBI misled investors by making statements attributing its results to factors other than "stuffing" Tommy's with inventory, ¶ 166, does not salvage the claim because "Rule 10b-5(a) and (c) are not backdoors to liability for those who facilitate the preparation of [alleged] false statements." *In re AT&T*, 480 F. Supp. 3d at 534.

### IV.    The AC Fails To Adequately Plead Loss Causation

Plaintiff does not dispute that three of the four alleged corrective disclosures in January, February, April and May 2024 do not refer to Tommy's at all. The January and May statements reported weaker sales, higher inventory levels, and a reduction in production across MBI's entire business, ¶¶ 200, 209, and the February statement announced Mr. Springer's resignation. ¶ 202. None of these disclosures concerned Tommy's financial condition or revealed that MBI was "stuffing" Tommy's with inventory. Plaintiff contends that a corrective disclosure can be "constructive" and need not be a "mirror image" of an alleged misrepresentation, Opp. 34, but in

---

[12] By contrast, the conduct at issue in Plaintiff's cases was inherently deceptive. *See SEC v. Farnsworth*, 692 F. Supp. 3d 157 (S.D.N.Y. 2023) (defendants defrauded customers); *In re Mylan N.V. Sec. Litig.*, 2020 WL 1673811, *5 (S.D.N.Y. Apr. 6, 2020) (defendant fixed drug prices). Moreover, when *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) was decided, "the Second Circuit ha[d] not yet addressed" the scheme liability question before it. *Id.* *7. Subsequently, in *Rio Tinto*, the Second Circuit made clear that scheme liability does not extend to "participation in the preparation of misstatements." *Rio Tinto*, 41 F.4th at 54.

the cases that it cites the alleged corrective disclosures were still about the same *subject* as the alleged misrepresentations, so as to indicate the challenged statements were false.[13] By contrast, the January, February, and May 2024 statements here reported generic, company-wide news, not information about Tommy's. "A disclosure cannot correct something that it does not even talk about." *Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, *151 (S.D.N.Y. Sept. 19, 2024).

Rather than admit or imply that MBI made any false statements, MBI's April 2024 press release stated that MBI would vigorously defend against Tommy's claims. ¶¶ 99, 203. Plaintiff makes no attempt to address the authority holding that mere allegations of wrongdoing "do[] not 'reveal[ ] to the market the pertinent truth of anything,' and therefore do[ ] not qualify as a corrective disclosure." *Meyer v. Greene,* 710 F.3d 1189, 1201 n.13 (11th Cir. 2013).[14] Plaintiff is ultimately reduced to a footnote argument that the April 2024 press release "revealed" that MBI had terminated its business relationship with Tommy's. Opp. 34 n.32. But Plaintiff makes no attempt to show how that disclosure corrected any challenged statement, and the AC fails to plead facts showing that Tommy's informed MBI, or that MBI otherwise learned about, Tommy's default with M&T Bank before the last challenged statement on March 5, 2024. *See* Br. 23.[15]

## CONCLUSION

For all these reasons, the Amended Complaint should be dismissed with prejudice.

---

[13] *See Cohen v. Kitov Pharms. Holdings, Ltd.,* 2018 WL 1406619, *6 (S.D.N.Y. Mar. 20, 2018) ("constructive" corrective disclosure reported a regulatory investigation finding that the defendants made misleading statements about the same clinical trial that was the subject of the challenged statements in the securities action); *In re AppHarvest Sec. Litig.,* 684 F. Supp. 3d 201, 274 (S.D.N.Y. 2023) (alleged corrective disclosure stated revenues were affected by the same "labor and productivity" issues that were the subject of alleged false statements).

[14] *Compare also Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, *18-19 (W.D. Pa. Sept. 8, 2017) ("The Oregon AG Complaint contains allegations of unproven misconduct, thus it is not a corrective disclosure …"), *with Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 695 (6th Cir. 2017) (civil complaint, combined with defendant company's CFO's related admission, amounted to corrective disclosure), *and In re Take–Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 287–90 (S.D.N.Y. 2008) (disclosure of SEC investigation sufficient corrective disclosure when followed by (i) defendant company's announcement of a preliminary finding of "improprieties in the [defendant] company's option grants"; and (ii) corporate officer's guilty plea to options backdating).

[15] Absent a Section 10(b) violation, Plaintiff's Section 20(a) claim fails. *Compare* Br. 35, *with* Opp. 35 n.33.

Dated:  New York, New York
        December 20, 2024

Respectfully submitted,

COOLEY LLP

By:  _/s/ Sarah M. Lightdale_
    Sarah M. Lightdale
    Aric H. Wu
    Reed A. Smith
    Anne E. Bigler

55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Fax: (212) 479-6275
slightdale@cooley.com
ahwu@cooley.com
reed.smith@cooley.com
abigler@cooley.com

Brett De Jarnette (_pro hac vice_)
3175 Hanover Street
Palo Alto, CA 94304
Tel: (650) 843-5000
Fax: (650) 849-7400
bdejarnette@cooley.com

_Attorneys for Defendants Malibu Boats, Inc.,_
_Jack Springer, Bruce Beckman, David Black,_
_and Wayne Wilson_

16