**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| RETIREE BENEFIT TRUST OF THE CITY OF BALTIMORE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MALIBU BOATS, INC., JACK SPRINGER, BRUCE BECKMAN, DAVID BLACK, and WAYNE WILSON,<br><br>Defendants. | No. 1:24-cv-03254-LGS<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT.................................................................................... 1

II.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST .................... 5

    A.    The Longstanding Preference For The Percentage Of The Fund Method Of
        Awarding Attorneys' Fees In Common Fund Cases ................................................ 5

    B.    The *Goldberger* Factors Support The Reasonableness Of The Fee Request.......... 6

        1.    First Step In Applying The *Goldberger* Factors ........................................ 7

        2.    Second Step In Applying The *Goldberger* Factors.................................. 10

        3.    Third Step in Applying the *Goldberger* Factors—Lodestar Cross-
              Check .................................................................................................... 16

    C.    Lead Counsel's Litigation Expenses And Lead Plaintiff's Reimbursement
        Award Are Reasonable And Should Be Granted ................................................. 17

III.  CONCLUSION..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ..................................................................................... 12

*Ashe v. Arrow Financial Corp.*,
2025 WL 487427 (N.D.N.Y. Feb. 13, 2025) ........................................................... 10, 17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ....................................................................................................... 5

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG,*
2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) .............................................................. 17

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................................. 6, 10

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017) ........................................................................ 12

*Fulton Cnty. Employees' Ret. Sys. on Behalf of Goldman Sachs Group, Inc. v. Blankfein*,
2023 WL 350888 (S.D.N.Y. Jan. 20, 2023) ................................................................. 16

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43 (2d Cir. 2000) ........................................................................................ 6, 16

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................................... *passim*

*In re 3D Sys. Sec. Litig.*,
2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ....................................................................... 4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................... 12

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022) .................................................................. 2

*In re Cnova N.V. Sec. Litig.*,
2018 WL 11447878 (S.D.N.Y. Mar. 20, 2018) .......................................................... 2, 17

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. July 8, 2014) .................................................................. 6

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................. 14, 17

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018)...................................................................... 6, 7, 16

*In re Giant Interactive Group, Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................................. 4, 9

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016)................................................................................ 14

*In re Patriot National Sec. Litig.*,
2019 WL 5882171 (S.D.N.Y. Nov. 6, 2019)............................................................................... 8

*In re Patriot National, Inc. Sec. Litig.*,
828 F. App'x. 760 (2d Cir. 2020) .............................................................................................. 13

*In re PPDAI Group Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)............................................................................... 7

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) .............................................................................. 7

*In re Restasis Antitrust Litig.*,
2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) .............................................................................. 3

*In re Retek Inc. Sec. Litig.*,
621 F. Supp. 2d 690 (D. Minn. 2009) ...................................................................................... 12

*In re Romeo Power Inc. Sec. Litig.*,
2024 WL 5319107 (S.D.N.Y. Aug. 1, 2024).............................................................................. 16

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020).......................................................................*passim*

*In re Talkspace, Inc. Sec. Litig.*,
2023 WL 12028295 (S.D.N.Y. Oct. 30, 2023)..................................................................... 8, 12

*In re Tenaris S.A. Sec. Litig.*,
2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ....................................................................... 7, 16

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
2020 WL 13548408 (S.D.N.Y. Mar. 27, 2020)..................................................................... 3, 17

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).................................................................... 15, 19

*In re Wilmington Tr. Sec. Litig.*,
2018 WL 6046452 (D. Del. Nov. 19, 2018).............................................................................. 13

*In re: Genworth Financial Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................................... 9

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*,
   2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) ........................................................................ 3

*Lea  v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................................. 4, 7, 10

*Leach v. NBC Universal Media, LLC*,
   2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ...................................................................... 8

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................... 8

*McIntosh v. Katapult Holdings, Inc.*,
   2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) .............................................................5, 11, 14

*Parmelee v. Santander Consumer USA Holdings Inc.*,
   2019 WL 2352837 (N.D. Tex. June 3, 2019) ......................................................................... 8

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
   2022 WL 2093054 (D. Minn. June 10, 2022) ................................................................. 13, 16

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ........................................................................................... 12

*Schutter v. Tarena International, Inc.*,
   2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ........................................................................ 5

*Sponn v. Emergent Biosolutions, Inc.*,
   2019 WL 11731087 (D. Md. Jan. 25, 2019) .......................................................................... 8

*Stein v. Eagle Bancorp, Inc.*,
   2022 WL 407367 (S.D.N.Y. Feb. 10, 2022) .......................................................... 2, 8, 17, 19

*Taft v. Ackermans*,
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .......................................................................... 8

*Tellabs, Inc. v Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................. 14

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ...................................................................... 13

*Vitiello v. Bed Bath & Beyond, Inc.*,
   2022 WL 21305086 (D.N.J. June 3, 2022) ............................................................................ 8

Lead Counsel respectfully submits this memorandum of law in support of the Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I.    PRELIMINARY STATEMENT

Lead Counsel obtained an excellent recovery of $7.8 million on behalf of the Settlement Class.  Significantly, the Settlement represents approximately 11% to 32% of Plaintiff's likely maximum recoverable damages at trial, an amount that is substantially greater than the median 7.3% recovery in securities class action settlements in 2024, and is particularly noteworthy in light of MBI's limited available cash and rapidly wasting insurance policies, which made a meaningfully larger recovery unlikely and speculative at best.[2]  Moreover, the Settlement is noteworthy in light of the substantial risks that Plaintiff faced in establishing liability and damages. Indeed, as set forth more fully below, had litigation continued, there was a significant risk that the Settlement Class would have achieved no recovery whatsoever, or a significantly lesser recovery.

Had the Action survived Defendants' motion to dismiss, Defendants would have further advanced vigorous challenges at class certification, summary judgment, and trial on each of the core elements of the securities fraud claims at issue.  While Plaintiff and Lead Counsel believe they had compelling counterarguments and, absent the Settlement, would have vigorously prosecuted this Action through trial and any appeals, the Settlement Class nonetheless faced a

---

[1] Lead Counsel respectfully refers the Court to the accompanying Declaration of Joshua H. Saltzman in Support of: (I) Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Saltzman Decl." or "Saltzman Declaration") for a detailed description of the case and the Settlement. Unless otherwise indicated, all capitalized terms herein shall have the meanings provided in the Stipulation and Agreement of Settlement ("Stipulation" or "Settlement Agreement," ECF No. 61) or in the Saltzman Declaration.  All citations to "¶" or to "Ex." refer to paragraphs in or exhibits to the Saltzman Decl.; all citations are omitted; and all emphasis is added.

[2] *See* ECF No. 62-1 at 11.

significant risk that Defendants' arguments would have eliminated most or all of Plaintiff's estimated damages.

And, even if Plaintiff prevailed on all of its arguments at all stages of litigation, the Settlement Class faced collectability risk. The primary source of funds available to fund any future judgment or settlement would likely have been Defendants' directors-and-officers ("D&O") insurance policies, which, had this Action continued, would have been rapidly depleted by this and multiple other litigations. The Settlement avoids the diversion of this critical source of funds to pay defense costs in this and other litigations, rather than compensating the Class. Indeed, the Settlement recovers most of Defendants' applicable insurance funds available at the time of settlement.

For securing this recovery, Lead Counsel Saxena White P.A. ("Saxena White") seeks attorneys' fees of 30% of the Settlement Fund—an award well in-line with fee awards in the Second Circuit, including this Court, and around the country in securities and complex class actions. *See e.g., In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (Schofield, J.) (one-third fee on $44 million PSLRA recovery, plus accrued interest on that amount); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 407367, at *1 (S.D.N.Y. Feb. 10, 2022) (Schofield, J.) (30% fee on $7.5 million PSLRA settlement amount in action settled while motion to dismiss pending); *In re Cnova N.V. Sec. Litig.*, 2018 WL 11447878, at *3 (S.D.N.Y. Mar. 20, 2018) (one-third fee on $28.5 million settlement was in line with "awards to successful plaintiffs' counsel in other, similar litigation"). Indeed, as this Court has noted, a request for 30% of the Settlement Fund is "fair and reasonable and consistent with awards in similar cases." *Eagle Bancorp*, 2022 WL 407367, at *2. Significantly, as demonstrated by data from the National Economic Research Associates, for securities class actions settled between 1996 and 2014 and

2

between 2015 and 2024, with a settlement value ranging from $5 million to $10 million, the median of plaintiffs' attorneys' fees as a percentage of settlement value was 30%.  *See* ECF No. 62-3 at 33.

Moreover, a lodestar "cross-check" fully supports this award, as the requested fee equates to a "multiplier" of just 1.34, which is well within the range of typical lodestar multiples awarded. *See Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, 2022 WL 3127633, at *5 (E.D.N.Y. Apr. 12, 2022) (one-third fee of $10 million settlement at 2.54 multiplier and noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers[,]"); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620, ECF No. 44 at 1 (S.D.N.Y. Feb. 14, 2020) and 2020 WL 13548408, at *4 (S.D.N.Y. Mar. 27, 2020) (awarding one third fee of $15 million settlement and any applicable interest, with 3.10 multiplier).

In addition, Plaintiff is a sophisticated institutional investor who has actively supervised this Action from the outset, and it has endorsed the fee request as consistent not only with its retainer agreement, but also as representative of Lead Counsel's efforts in the Action.  Furthermore, the reaction of the Settlement Class also strongly supports the requested fee, as no objection to the fee request has been filed to date—which, again, is particularly significant given that the majority of the Settlement Class consists of institutional investors with the resources to object, if warranted. Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support of the requested fee award.  *See, e.g., In re Restasis Antitrust Litig.*, 2020 WL 6193857, at *5 (E.D.N.Y. Oct. 7, 2020) (fact that "[n]o class member has objected" supported one-third fee award).

Lead Counsel also requests reimbursement of $115,601.47 in Litigation Expenses—a reasonable amount.  Here, the notices sent to class members affirmed that any expense request would not exceed $150,000, and no class member has objected to this request. "Courts in the

3

Second Circuit normally grant expense requests in common fund cases as a matter of course." *See, e.g., In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (awarding $263,945.54 in expenses in a $13 million securities class action settlement). With no guarantee of success, Lead Counsel only incurred reasonable expenses necessary to the prosecution of the Action.

Finally, Lead Plaintiff's $1,500 representative reimbursement award is fair and reasonable, as is expressly contemplated by the PSLRA and routinely awarded in securities class actions. *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *13 (S.D.N.Y. Nov. 30, 2021) (granting $7,500 for each lead plaintiff as "[s]uch awards 'are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs'"); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *17 (E.D.N.Y. Jan. 4, 2024) (approving awards of $3,500 and $7,500 to plaintiffs finding the "awards requested in this case are in line with or are more modest than others that have been awarded in the Second Circuit"). Plaintiff reviewed the pleadings and motion papers and ensured that Lead Counsel kept it fully informed of the relevant facts so that it could make important decisions, including the determination to settle the case at this juncture.

As set forth below, in the Final Approval Memorandum, and in the Saltzman Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees of 30% of the Settlement Fund (the Settlement Amount, plus all interest accrued thereon), approve reimbursement of $115,601.47 in out-of-pocket litigation expenses, plus all interest accrued thereon, and grant Lead Plaintiff's PSLRA award in the amount of $1,500.

4

## II.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.   The Longstanding Preference For The Percentage Of The Fund Method Of Awarding Attorneys' Fees In Common Fund Cases

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Similarly, courts in the Second Circuit have recognized "the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis," and have noted that "the Supreme Court has ... emphasized that private actions provide a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at \*13 (S.D.N.Y. Dec. 13, 2024).  Fairly compensating plaintiffs' counsel for their risks is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*15 (S.D.N.Y. July 21, 2020).

Accordingly, "[t]he trend in this [C]ircuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Schutter v. Tarena International, Inc.*, 2024 WL 4118465, at \*12 (E.D.N.Y. Sept. 9, 2024).[3]  In preferring this method, courts in the Second Circuit recognize that the "adoption of the percentage of recovery methodology is consistent with national

---

[3] The PSLRA supports this preference, stating: "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*15 (S.D.N.Y. Dec. 18, 2019) (noting "[t]he text of the PSLRA also contemplates using the percentage method" and "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions").

precedent" and that there "is a strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees that represent a 'reasonable percentage' of the damages recovered by the class." *Guevoura Fund*, 2019 WL 6889901, at *15.[4]  Nevertheless, the lodestar method remains useful as a "cross check on the reasonableness of the requested percentage." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2018 WL 5839691, at *1 (S.D.N.Y. Nov. 8, 2018) ("*Forex*") (Schofield, J.).

### B.     The *Goldberger* Factors Support The Reasonableness Of The Fee Request

To determine a reasonable fee award, courts in the Second Circuit consider the *Goldberger* factors, which include "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  In application, this Court has "adopt[ed] the three-step approach set forth in *Colgate-Palmolive*." *Forex*, 2018 WL 5839691, at *2 (citing *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. July 8, 2014)). Here, each factor readily supports approval of the requested fee.

First, the Court "determine[s] a baseline reasonable fee by reference to other common fund settlements of a similar size, complexity and subject matter." *Forex*, 2018 WL 5839691, at *2. "This step considers three of the *Goldberger* factors -- the requested fee in relation to the settlement, the magnitude and complexity of the case, and the policy consideration of avoiding a windfall to class counsel." *Id*.  "The second step is to make any necessary adjustments to the baseline fee based on the *Goldberger* factors of risk, quality of representation and other public

---

[4] Moreover, the Second Circuit prefers the percentage of the fund method not only because it is simpler, but because it decreases incentives to run up the number of billable hours, to delay settlement, and avoids "an inevitable waste of judicial resources." *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014).

6

policy concerns." *Id*. The final step "is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor of the time and labor expended by counsel." *Id*. As detailed below, based on this analysis, a reasonable baseline fee in this Action is 30%, which requires no further adjustment.

### 1.    First Step In Applying The *Goldberger* Factors

#### a.    The Applicable Baseline Fee—30% Is Not A Windfall Here

According to data compiled by National Economic Research Associates ("NERA") Economic Consulting, for securities class actions settled between 1996 and 2024 with a gross settlement value ranging from $5 million to $10 million, the median of plaintiffs' attorneys' fees as a percentage of settlement value was 30%. *See* ECF No. at 62-3. As this Court has recognized, the most relevant comparables are settlements of the same case type with a similar settlement size. *See Forex*, 2018 WL 5839691, at *2 (court should "determine a baseline reasonable fee by reference to other common fund settlements of a similar size, complexity and subject matter"). Accordingly, Lead Counsel respectfully suggests that the Court use NERA's median fee percentage for post-PSLRA securities class action settlements between $5 million to $10 million—30%—as the baseline fee for this $7.8 million Settlement.

In addition, fee awards of 30% or more are routinely awarded in class action settlements in this District, Circuit, and nationwide for cases similar in size to the present Action. *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *12 (E.D.N.Y. Apr. 22, 2024) (award of 33 1/3% of the $9,500,000 settlement fund, plus interest); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding 33 1/3% of $8.5 million settlement, plus interest); *In re PPDAI Group Inc. Sec. Litig.*, 2022 WL 198491, at *9 (E.D.N.Y. Jan. 21, 2022), 2022 WL 198491, at *16 (approving one-third of $9 million settlement as "[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million"); *Lea*, 2021 WL 5578665, at **11,

13 (approval of 33 1/3% of $7.5 million settlement fund); *In re Patriot National Sec. Litig.*, 2019 WL 5882171, at **1-2 (S.D.N.Y. Nov. 6, 2019) (awarding 33% of $6.5 million settlement, plus interest).[5]    Indeed, the requested fee will not result in a windfall to Lead Counsel.  *See Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of this size does not create such an issue. The requested fee is reasonable in relation to the settlement amount.").

Additionally, that this case was settled before the Court decided Defendants' pending motion to dismiss does not alter the analysis.  *See Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, at ¶40 (S.D.N.Y. Aug. 24, 2017) ("reward[ing] [counsel] for the extent and expediency of the recovery for the Settlement Class[] that they have achieved").   Recognizing the importance of efficient and effective advocacy, courts have repeatedly awarded similar fees where a settlement was reached during the pendency of a motion to dismiss or shortly thereafter, and where no or limited discovery had been obtained due to the PSLRA discovery stay.  *See, e.g., In re Talkspace, Inc. Sec. Litig.*, 2023 WL 12028295, at *1 (S.D.N.Y. Oct. 30, 2023) (awarding 30% fees on a $8.5 million settlement, plus interest, where motion to dismiss pending); *Eagle Bancorp, Inc*., 2022 WL 407367, at *2 (awarding 30% of $7.5 million securities class action settlement, where motion to dismiss pending); *see also Maley v. Del Global Tech. Corp*., 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding one-third of $11.5 million settlement, representing a 4.65 multiplier, where motions to dismiss were pending).

---

[5] *See also Vitiello v. Bed Bath & Beyond, Inc.*, 2022 WL 21305086, at *8 (D.N.J. June 3, 2022) (approval of 33 1/3% of $7 million settlement fund, plus interest); *Parmelee v. Santander Consumer USA Holdings Inc*., 2019 WL 2352837, at **1-2 (N.D. Tex. June 3, 2019) (award of 33 1/3% of the $9,500,000 settlement fund); *Sponn v. Emergent Biosolutions, Inc*., 2019 WL 11731087, at *1 (D. Md. Jan. 25, 2019) (award of 33% of $6.5 million settlement, plus interest).

**b.**     **The Magnitude And Complexity Of The Action Support The Fee Request**

Securities class actions are by their very nature complicated, and courts in this Circuit and nationwide have long recognized that securities class actions are "notably difficult and notoriously uncertain" to litigate, and that such cases "are generally complex and expensive to prosecute" due to "the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Signet Jewelers*, 2020 WL 4196468, at *4; *see also Giant Interactive*, 279 F.R.D. at 164 ("A securities case, by its very nature, is a complex animal").  Here, in addition to facing the heightened pleading standard and automatic discovery stay of the PSLRA—which can be problematic in the best of times as demonstrated by the high dismissal rate of securities class actions—Defendants also raised many complex issues related to loss causation and damages, and contested their liability on falsity and scienter, discussed in greater detail in the risk section below. *See In re: Genworth Financial Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("Even before trial, [] 54% of securities class actions cases are dismissed").  Addressing these issues required substantial efforts by Lead Counsel, through detailed analysis of the factual record, intensive legal research, and extensive consultation with experts.

Moreover, even though no written discovery was exchanged in the Action, Lead Counsel conducted a comprehensive investigation which included an extensive review of court filings in two related lawsuits and the Tommy's Boats bankruptcy proceedings, interviews of former employees of MBI, Tommy's Boats, and other dealers in MBI's dealer network, multiple telephone calls with litigation counsel for Matthew Borisch, President and owner of Tommy's, and review of numerous other documents including Defendants' public statements (in SEC filings, investor conference call transcripts, investor presentations, and press releases), as well as news articles and financial analyst research reports.  As detailed below, this was a hard-fought, expensive litigation,

9

against considerable opposition, with significant damages at stake, and it required considerable skill and resources to litigate. These factors all contributed to the challenges of this Action, thus further supporting the requested fee award.

### 2. Second Step In Applying The *Goldberger* Factors

#### a. The Risk Of The Litigation Weighs In Favor Of The Fee Request

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Signet*, 2020 WL 4196468, at *19 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success"). Indeed, the risks in this Action were very high, and therefore weigh heavily in support of the requested fee.

"The Second Circuit has recognized that risk is inherently associated with a case undertaken on a contingent fee basis." *Lea*, 2021 WL 5578665, at *12. From the beginning of the case, Lead Counsel "understood that it was embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require." *Aeropostale*, 2014 WL 1883494, at *14. Despite the risk of no recovery, Lead Counsel "invested extensive time and costs with no guarantee of success," "proceeded with the litigation[,] and obtained a favorable outcome for the class." *Ashe v. Arrow Financial Corp.*, 2025 WL 487427, at *13 (N.D.N.Y. Feb. 13, 2025).

Even aside from the particular risks presented by this Action (as discussed below), PSLRA cases are inherently risky, with over half of the cases filed in 2024 dismissed at the pleading stage. *See* Flores and Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA) (Jan. 22, 2025) at 13 and Fig. 11, ECF 62-3. Over 57% of the securities class action cases resolved in 2024 (124 out of 217) were resolved via dismissal, and the number of

dismissals increased by 29% from 2023, "largely driven by a rise in dismissals involving standard cases." *Id*. Of the cases dismissed in 2024, 76% were dismissals pursuant to Court orders (only 24% were voluntary dismissals). *Id*. at 14 and Fig. 12. NERA also reported that, out of all of the motions to dismiss in cases filed and resolved from January 2015 through December 2024, 61% were granted (with or without prejudice) and 20% were granted in part. *Id*. at 17 and Fig. 15.

Further, had the Action continued through discovery and trial, Plaintiff would have encountered more significant risks. As discussed in the Final Approval Memorandum, Defendants would have continued to dispute the elements of falsity, materiality, scienter, loss causation, and damages at class certification, summary judgment, and trial. *See McIntosh*, 2024 WL 5118192, at *10 ("Plaintiffs acknowledge there is simply no guarantee that the evidence will support their [] claims … Plaintiffs would need to convince a jury that Defendants acted with the requisite scienter. Proving scienter is hard to do – especially here where Defendants have asserted that the alleged hidden information was in fact publicly available and that [] statements were inactionable …"). The jury would have been presented with a "battle of the experts" at trial, and it is unknown whether they would have found Defendants' arguments (that damages were much less than Plaintiff claimed, or non-existent) persuasive. *See Signet Jewelers*, 2020 WL 4196468, at *11 ("issues regarding damages and loss causation would have presented the prototypical 'battle of the experts' at trial" with "no way to predict with any certainty which expert's opinions the jury would have accepted"). Further, the Parties' experts likely would have disagreed over the appropriate calculation of damages and the "disaggregation" of the portions of the stock price declines attributable to factors other than the alleged fraud, and there was no guarantee as to how the Court or a jury would have resolved these disputes. *See McIntosh*, 2024 WL 5118192, at *10. Hence,

11

there was a real possibility that the Settlement Class would recover less than the Settlement amount, or nothing at all,[6] even if Plaintiff obtained a successful jury verdict.[7]

Finally, even had Plaintiff fully prevailed on all of its claims and secured a judgment for maximum damages, there was a significant risk that it would have been unable to collect more than the Settlement Amount, and possibly nothing at all.  For example, at the time of Settlement, the Company had only $39 million in cash, and MBI's most recent earnings release had reduced the Company's guidance to predict a 3-5% year-over-year decline in net sales. As a practical matter, the primary source of funds available for the Settlement was therefore MBI's D&O insurance. Here, the Settlement Amount constitutes the majority of MBI's D&O insurance that remained available to fund a recovery in this Action, which was actively eroding from this and other litigations.

This "demonstrable risk," that Lead Counsel "would invest substantial efforts and receive nothing," weighs "strongly in favor of the fee request." *Guevoura Fund*, 2019 WL 6889901, at *20; *see also In re Talkspace*, *Inc. Sec. Litig.*, 2023 WL 12028295, at *2 (S.D.N.Y. Oct. 30, 2023) ("had Lead Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from the Defendants").

---

[6] *See e.g., In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 708-09 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (same with respect to, inter alia, lack of falsity and scienter).

[7] *See, e.g. Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 overturned on the basis of 1994 Supreme Court opinion); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at **20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd, Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012).

### b.      The Quality Of The Representation Supports The Fee Request

Despite the significant risks to recovery in this Action, Lead Counsel successfully obtained a $7.8 million Settlement, which amounts to approximately 11% to 32% of the estimated maximum recoverable damages calculated by Lead Plaintiff's expert.  This 11% to 32% recovery far exceeds the typical recovery in comparable cases—substantially greater than the median 7.3% recovery in securities class action settlements in 2024.  *See* Cornerstone Report, ECF 62-1; *In re Patriot National, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (upholding 33% fee award as reasonable where recovery represented 6.1% of maximum recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (recovery "represent[ing] 6.5% of the maximum recoverable damages [] is reasonable and in line with other settlements in securities class actions").[8]

Lead Counsel is also highly experienced and well-respected in the field of securities class action litigation and has an extensive track record in obtaining numerous large cash recoveries on behalf of investors.  *See, e.g., In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White is "highly experienced" and that "the significant amount of recovery in the settlement agreements attests to their efficiency"); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022) (approving $63 million settlement and noting that Saxena White "conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy").

---

[8] In addition, the Cornerstone Report at 7 shows that the median settlement as a percentage of damages for cases with damages from $25 million to $74 million was 10.3% in 2015 through 2023, and 8.4% in 2024.  For cases with damages less than $25 million, the median for 2015 to 2023 was 20%, and the figure was 28.2% for 2024.  *Id*.

The quality of the opposition should also be taken into consideration in assessing the quality of Lead Counsel's representation of the Class. Defendants were represented by Cooley LLP, a global law firm with approximately 1,400 attorneys and 19 offices worldwide—including over 100 lawyers focused on securities litigation—with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. *See In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at \*28 (D.N.J. Nov. 15, 2016) ("Here, Defendants were represented by . . . Cooley LLP . . . [a] prominent law firm[] with substantial experience in securities class actions," and the "fact that Plaintiff's Counsel achieved this Settlement for the Class in the face of such formidable legal opposition further evidences the quality of their work.").

### c.    Public Policy Considerations Support the Requested Fee

The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs, Inc. v Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). As discussed above, the Second Circuit takes the same view. *See McIntosh*, 2024 WL 5118192, at \*13 ("Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis"); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"). Moreover, "for most Class Members, this Action was the only hope of obtaining compensation for the losses they suffered as a result of the allegations here" and thus "public policy favors granting [the] request for fees." *Guevoura Fund*, 2019 WL 6889901, at \*21.

14

####     d.        Other Relevant Factors—Plaintiff's Approval And The
                   Settlement Class's Reaction Support The Reasonableness Of
                   The Requested Fee

Lead Plaintiff—who has actively supervised Lead Counsel and participated in this Action from its inception—is precisely the type of sophisticated institutional investor Congress envisioned would participate in the litigation and exercise control over Lead Counsel, and its endorsement heavily supports the requested fee. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("a fee request which has been approved and endorsed by a properly appointed lead plaintiff is presumptively reasonable, especially where the lead plaintiff is a sophisticated institutional investor").  Moreover, the fact that the requested fee is based on the retainer agreement that Lead Counsel entered into with Lead Plaintiff at a minimum "supports approval of the fee" and is even viewed by a number of courts as "presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class." *Signet Jewelers*, 2020 WL 4196468, at *17.

Further, as of this filing, not a single member of the Settlement Class has objected to the requested fee.[9]  The lack of objections is particularly significant given that the majority of the Settlement Class consists of institutional investors with the resources to object, if warranted.  Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support of the requested fee award.  *Guevoura Fund*, 2019 WL 6889901, at *22 ("The lack of objections, in this day and age, is not only remarkable, but militates in favor of approval of the [f]ees as requested.").

---

[9] The deadline for objections is January 6, 2026.

### 3. Third Step in Applying the *Goldberger* Factors—Lodestar Cross-Check

The last step in this Court's analysis of the *Goldberger* factors is to cross-check the fee award against the lodestar multiplier. *Forex*, 2018 WL 5839691, at *5. "The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate)." *Id*. When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F. 3d at 50.

The lodestar cross-check here confirms that Lead Counsel's requested 30% fee is reasonable and should be approved. Lead Counsel and its professional staff have spent, in the aggregate, over 2,600 hours in the prosecution of this Action, at hourly rates ranging from $420 to $1,195 for attorneys, directors and shareholders, and $345 to $605 for professional staff (*see* Saltzman Decl. Ex. C).[10] Here Lead Counsel's total lodestar is $1,741,373.75, and the requested 30% fee equates to a multiplier of 1.34, which is well within, and even at the lower end of, the typical range of multipliers routinely approved by Courts in this District and Circuit. *See, e.g.,*

---

[10] Lead Counsel's hourly rates are comparable to or lower than hourly rates approved by this Court and others within the Circuit (especially taking into account the recent rate of inflation). *See, e.g.*, *In re Romeo Power Inc. Sec. Litig.,* 2024 WL 5319107, at *2 (S.D.N.Y. Aug. 1, 2024) (Schofield, J.) (acknowledging lodestar comprised of hourly rates of $395 to $1,195 for attorneys, senior counsel, and partners and $325 to $400 for paralegals); *Tenaris,* 2024 WL 1719632, at *10 ("the Court notes that Lead Counsel's billing rates, which 'range from $675 to $1,100 for partners, and $395 to $725 for non-partners' are comparable to peer law firms in recent years"); *Signet*, 2020 WL 4196468, at *19 and, ECF No. 258-4 at 7 (in 2020, approving rates of partners, $825-$1,300; associates, $425-$600; staff attorneys, $350-$395; paralegals, $255-$375); *Amerigroup,* 2012 WL 13239969, at ¶ 14 (E.D.N.Y. July 23, 2012), 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving—a decade ago—rates up to $1,000 for partners, $475 for associates, and $215 for paralegals). In fact, Lead Counsel's rates have recent judicial approval in this Circuit and around the country. *See, e.g., In re FibroGen, Inc. Sec. Litig.,* No. 3:21-cv-02623-EMC, ECF No. 252, Ex. E (N.D. Cal. Apr. 4, 2024) and Order Awarding Attorneys' Fees and Expenses, ECF No. 259 (N.D. Cal. Aug. 1, 2024) (approving Saxena White's then-current rates of $1,085 for shareholders, $825-$1,085 for directors, and $400-$795 for attorneys and senior attorneys); *Fulton Cnty. Employees' Ret. Sys. on Behalf of Goldman Sachs Group, Inc. v. Blankfein*, 2023 WL 350888, at *4 (S.D.N.Y. Jan. 20, 2023); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022).

*Signet*, 2020 WL 4196468, at \*16 (in "complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved"); *Cnova*, 2018 WL 11447878, at \*3 (one third fee awarded for $28.5 million settlement in action that settled prior to motion to dismiss ruling with 3.79 multiplier); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620, ECF No. 44 at 1 (S.D.N.Y. Feb. 14, 2020) and 2020 WL 13548408, at \*4 (S.D.N.Y. Mar. 27, 2020) (awarding one third fee with 3.10 multiplier for action settled before motion to dismiss); *Eagle Bancorp*, 2022 WL 407367, at \*2 (awarding 30% of a 7.5 million settlement amount with a 1.47 multiplier).

Moreover, Lead Counsel will continue to expend—but will not seek reimbursement for—additional time and out-of-pocket expenses in connection with the settlement administration process, the fairness hearing, and if the Settlement is approved, assisting with implementation of the Settlement.  This further supports the requested award of attorneys' fees.[11]  *Ashe*, 2025 WL 487427, at \*12 ("That Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

    **C.**    **Lead Counsel's Litigation Expenses And Lead Plaintiff's Reimbursement Award Are Reasonable And Should Be Granted**

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *In re Flag Telecom Holdings,* 2010 WL 4537550, at \*30 (approving fees "law firms typically bill to their clients" like photocopying,

---

[11] At the hearing on Plaintiff's motion for preliminary approval of the Settlement, the Court requested that Plaintiff propose a schedule for the timing for payment of attorneys' fees.  Lead Counsel respectfully request that the Court approve payment of 75% of the fee award as well as reimbursement of litigation expenses upon final approval of the Settlement, with the other 25% of the fee payable to Lead Counsel upon distribution to the Settlement Class.  This Court approved a similar schedule of payment of fees in *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG,* 2020 WL 7413926, at \*5 (S.D.N.Y. Dec. 17, 2020) (Schofield, J.).

mediation, court filings, online research, postage, transportation, and travel as "customary and necessary expenses for a complex securities action," finding expert fees "essential to the successful prosecution and resolution of the action").

The Postcard Notice and Notice apprised potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $150,000. Lead Counsel has incurred expenses in an aggregate amount of $115,601.47 in prosecuting this Action, significantly less than the cap set forth in the notices. These expenses include the costs of hiring experts, mediator fees, and computerized research, among other things, all of which are properly chargeable to the Settlement fund. *See* Saltzman Decl. at ¶53 and Ex. D. Such expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which Lead Counsel seek reimbursement, are consistent with costs normally incurred by class counsel prosecuting securities fraud class actions. *See, e.g., Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred - which include investigative and expert witnesses, filing fees, service of process, travel, legal research…are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

Lastly, Lead Plaintiff also seeks a representative reimbursement of $1,500 as an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"—an award specifically envisioned in the PSLRA. *See* 15 U.S.C. §78u-4(a)(4). As detailed in Lead Plaintiff's Declaration, OPEB expended time and effort in representing the interests of the Settlement Class in this Action, including the review of pleadings and filings; conducting regular communications with Lead Counsel concerning case developments; and supervising the settlement process. The Notice advised Settlement Class Members that Lead Plaintiff would seek up to $1,500 as a reimbursement. No Settlement Class Member has objected to that amount as of the

18

date of this filing.  Lead Plaintiff's request is reasonable and well within the amounts commonly awarded by courts to representative plaintiffs in securities class actions.  *See e.g., Signet*, 2020 WL 4196468, at \*\*22–24 (collecting cases and awarding $25,410 to lead plaintiff); *Eagle Bancorp*, 2022 WL 407367, at \*2 (awarding $7,500 to lead plaintiff); *Veeco*, 2007 WL 4115808, at \*12 (awarding institutional lead plaintiff over $16,000 for costs and expenses incurred in representing the class).

## III.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully request that the Court award: (i) attorneys' fees in the amount of 30% of the Settlement Fund; (ii) reimbursement of $115,601.47 in Litigation Expenses; and (iii) a PSLRA reimbursement award of $1,500 to Lead Plaintiff.

Dated: December 23, 2025

Respectfully submitted,

**SAXENA WHITE P.A.**

By: *Joshua H. Saltzman*
Steven B. Singer
Joshua H. Saltzman
Sara DiLeo
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com
jsaltzman@saxenawhite.com
sdileo@saxenawhite.com

**SAXENA WHITE P.A.**
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

*Lead Counsel for Lead Plaintiff*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

Respectfully submitted,

By: */s/ Joshua H. Saltzman*
Joshua H. Saltzman

20

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Civil Rule 7.1(c) and §III.B.1 of the Court's Individual Rules and Procedures for Civil Cases, that the foregoing memorandum of law complies with the word-count limitations thereof, in that it contains 6,308 words.

Dated: December 23, 2025                    By: *Joshua H. Saltzman*
                                            Joshua H. Saltzman

21