**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RETIREE BENEFIT TRUST OF THE
CITY OF BALTIMORE, Individually and
on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

MALIBU BOATS, INC., JACK
SPRINGER, BRUCE BECKMAN, DAVID
BLACK, and WAYNE WILSON,

Defendants.

24 Civ. 3254 (LGS)

**ORDER AWARDING ATTORNEYS' FEES,**
**REIMBURSEMENT OF LITIGATION EXPENSES**
**AND LEAD PLAINTIFF SERVICE AWARD**

WHEREAS, Lead Counsel moves for attorneys' fees, reimbursement of litigation

expenses and a service award to Lead Plaintiff.

WHEREAS, the Court has considered all filings related to the motion and heard oral

argument on the motion on February 2, 2026 (the "Settlement Hearing").

WHEREAS, notice of the Settlement Hearing substantially in the form approved by the

Court was mailed and emailed to all Settlement Class Members who or that could be identified

with reasonable effort.  A summary notice of the hearing substantially in the form approved by

the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire*

pursuant to the Court's specifications.

WHEREAS, the Court has considered and determined the fairness and reasonableness of

the requested attorneys' fees, litigation expenses and service award.

WHEREAS, this Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 29, 2025 (Dkt. No. 61) (the "Stipulation").  All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.    The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

**Notice**

2.    Notice of Lead Counsel's motion for attorneys' fees, reimbursement of litigation expenses and service award to Lead Plaintiff was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees, reimbursement of litigation expenses and service award to Lead Plaintiff satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), due process and all other applicable laws and rules, constitutes the best notice practicable under the circumstances and constitutes due and sufficient notice to all persons and entities entitled thereto.

**Attorneys' Fees**

3.    Pursuant to Federal Rule of Civil Procedure 23(h), Lead Counsel for the Settlement Class are hereby awarded attorneys' fees in the amount of 30% of the Settlement Fund (the Settlement Amount, plus interest accrued thereon) (the "Fee Award"), and $115,601.47 in reimbursement of counsel's out-of-pocket litigation expenses, plus all interest accrued thereon (the "Expense Reimbursement"), which shall be paid from the Settlement Fund.

4.    The Fee Award of 30% of the Settlement Fund is an amount that is fair and reasonable based on the factors set forth in *Goldberger v. Integrated Res., Inc.*: "(1) the time and

labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."[1]  209 F.3d 43, 50 (2d Cir. 2000).

5.       Using the approach from *In re Colgate-Palmolive Co. ERISA Litig.*, the first step is to establish a baseline or benchmark fee amount on which to apply the *Goldberger* factors.  36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).  According to data compiled by National Economic Research Associates ("NERA"), for securities class actions settled between 2015 and 2024 with a gross settlement value ranging from $5 million to $10 million, the median of plaintiffs' attorneys' fees as a percentage of settlement value was 30%.  *See* Edward Flores & Svetlana Starykh, NERA, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, 30 fig. 27 (2025).  According to NERA, the median for the same size of settlements in securities cases that settled between 1996 and 2014 was also 30%.  *Id.*  The fees awarded in securities class actions of a comparable size and complexity support a 30% reasonable baseline fee.

6.       The Court has reviewed the *Goldberger* factors and concludes that no departure from the 30% baseline fee is appropriate.

a)       **The time and labor expended by counsel:** As of December 22, 2025, Lead Counsel and its professional staff spent 2,665.50 hours litigating this case at hourly rates ranging from $420 to $1,195 for attorneys and directors, and $345 to $605 for professional staff.  *See* Dkt. No. 78-3.  As discussed below, the hours and rates yield a reasonable lodestar multiple of 1.34.  Accordingly, the time and labor factor does not require an adjustment to the 30% baseline fee.

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

3

b)      **The magnitude and complexities of the litigation:** The relative complexity of securities class actions is factored into the NERA data, which analyzes fee awards in such cases that settle for varying amounts.  Defendants raised issues related to loss causation and damages and contested their liability on falsity and scienter.  Addressing these issues required Lead Counsel to analyze the factual record, conduct legal research and consult with experts.  In a review of 233 securities class actions with settlements of any size in 2006 and 2007, Professor Brian T. Fitzpatrick found that the median fee percentage was 25%.  *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 835 tbl. 8 (2010).  Professor Fitzpatrick found the same median fee percentage across 444 class actions with settlements of any size in 2006 and 2007 across all subject matters.  *Id.*  The higher median of 30% in securities cases compared with the lower median of 25% in class actions generally, sufficiently reflects the greater magnitude and complexity of securities cases such that no adjustment to the 30% baseline is necessary based on this factor.

c)      **The risk of the litigation:** The "foremost factor" in the required "searching assessment" of a case's characteristics is the contingency risk measured as of when the case was filed, *Goldberger*, 209 F.3d at 52-55, with "greater risks undertaken by counsel . . . support[ing] a higher [fee]." *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020).  This case was not exceptionally more or less risky to Lead Counsel.  For example, there was no governmental or regulatory proceeding that had already established liability.  Nor, on the other hand, was it evident that the case was more

challenging than the typical securities case with the need to prove scienter and loss

causation.  No adjustment is required for this factor.

d)      **The quality of representation:** Quality of representation is "best

measured by results."  *Goldberger*, 209 F.3d at 55.  Lead Counsel obtained a $7.8 million

Settlement Fund, representing approximately 11% to 32% of the estimated $24.5 million

to $70.45 million maximum recoverable damages calculated by Lead Plaintiff's expert.

The 11% to 32% recovery exceeds the 7.3% median recovery in securities class action

settlements in 2024.  *See* Laarni T. Bulan & Eric Tam, Cornerstone Rsch., *2024 Review*

*& Analysis: Securities Class Action Settlements* 7 (2025); *see also Vaccaro v. New*

*Source Energy Partners L.P.*, No. 15 Civ. 8954, 2017 WL 6398636, at *6 (S.D.N.Y. Dec.

14, 2017) ("The $2,850,000 settlement represents 6.5% of the maximum recoverable

damages.  This settlement amount is reasonable and in line with other settlements in

securities class actions.").  The quality of representation supports the baseline fee.

e)      **The requested fee in relation to the settlement:** "When awarding

attorneys' fees, the ideal proxy for the award should reflect the fees upon which common

fund plaintiffs negotiating in an efficient market for legal services would agree."  *In re*

*Colgate*, 36 F. Supp. 3d at 352.  Because the NERA data considers median fee

percentages in securities class actions with comparably sized settlements, no adjustment

to the 30% baseline is required for this factor.

f)      **Public policy considerations:** While "[c]ourts must scrutinize the unique

circumstances of each case with a jealous regard to the rights of those who are interested

in the fund," they also must avoid "setting fees too low" and "creat[ing] poor incentives"

for counsel bringing such cases in the future.  *Id.*  The Supreme Court "has long

recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). This case merits demonstrating to other class counsel that they will be compensated for the labor and cost of pursuing such a case and achieving success for the class. Public policy requires no adjustment to the 30% baseline.

7.      "The last step of the analysis is to cross-check the fee award against the lodestar multiplier." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2018 WL 5839691, at *5 (S.D.N.Y. Nov. 8, 2018), *aff'd sub nom.*, *Kornell v. Haverhill Ret. Sys.*, 790 F. App'x 296 (2d Cir. 2019). "The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate)." *Id.* "The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *In re Colgate*, 36 F. Supp. 3d at 353. "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Here, the lodestar cross-check yields a multiplier of 1.34, which is reasonable for a case of this size and complexity. Across 204 class action settlements that settled between 2006 and 2007 for which a lodestar multiplier could be ascertained, Professor Fitzpatrick found a median multiplier of 1.34 and a mean of 1.65. Fitzpatrick, *supra*, at 833-34. Professors Eisenberg, Miller and Germano found that for thirty-four class actions that settled between $6.5 million and $12 million during 2009-2013, the median multiplier was 1.09 and the mean was 1.48. Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 967 tbl. 13

(2017).  For the same 2009-2013 period, Professors Eisenberg, Miller and Germano found a mean multiplier of 1.93 across seventy-six cases of any kind in the Second Circuit and 1.79 across fifty-seven securities class actions across all circuits.  *Id.* at 965 tbl. 12.  Accordingly, the 1.34 lodestar multiplier corresponding to the Fee Award of 30% of the Settlement Fund is fair and reasonable.

8.    In ordering the Fee Award and Expense Reimbursement to be paid from the Settlement Fund, the Court has considered and found that:

a)    The Settlement has created a fund of $7,800,000 in cash that has been funded and placed into escrow pursuant to the terms of the Stipulation, and Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement;

b)    Over 25,000 notices were mailed or emailed to potential Settlement Class Members and nominees disclosing that Lead Counsel would apply for attorneys' fees in an amount not to exceed 30% of the Settlement Fund, reimbursement of litigation expenses in an amount not to exceed $150,000 and a service award to the Lead Plaintiff of up to $1,500.  There were no objections to the requested attorneys' fees, the reimbursement of litigation expenses or the service award;

c)    Lead Counsel has conducted the litigation and achieved the Settlement with diligent advocacy;

d)    The Action raised a number of complex issues;

e)    Had Lead Counsel not achieved the Settlement, there was a significant risk that Lead Plaintiff and the other members of the Settlement Class would not have recovered at least the Settlement Amount, and might have recovered nothing at all;

f) Lead Counsel worked at least 2,665.50 hours on this matter through December 22, 2025, with a lodestar value of $1,741,373.75 and a lodestar multiplier of 1.34, to achieve the Settlement;

g) The fee award requested here requires no adjustment based on the *Goldberger* factors to the reasonable baseline fee for this $7.8 million Settlement; and

h) The amount of the Fee Award is fair and reasonable and consistent with awards in similar cases.

**Expense Reimbursement**

9. The Expense Reimbursement of $115,601.47 is fair and reasonable. Notices were mailed or emailed to potential Settlement Class Members and nominees disclosing that Lead Counsel would apply for, among other things, reimbursement of litigation expenses in an amount not to exceed $150,000. There were no objections to the requested reimbursement of litigation expenses. The Expense Reimbursement predominantly covered the costs of experts and consultants ($81,106.25), online legal and financial research ($12,000.14) and mediation fees ($17,500.00), with the remainder spent on miscellaneous costs such as travel and printing services. The $115,601.47 Expense Reimbursement represents less than 1.5% of the $7,800,000 Settlement Fund, which is below the norm. According to NERA, during the 2015-2024 period, the median expenses for securities class actions that settled between $5 million and $10 million represented 2.2% of the settlement value. Flores & Starykh, *supra*, at 30 fig. 27. For the 1996-2014 period, that figure was 3.7%. *Id.* Accordingly, the Expense Reimbursement is fair and reasonable.

**Lead Plaintiff Service Award**

10.    Pursuant to 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff Retiree Benefit Trust of the City of Baltimore is hereby awarded $1,500 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class (the "Service Award").

**Procedural Matters**

11.    The Fee Award, Expense Reimbursement and Service Award shall be paid as follows: 50% of the Fee Award and the entirety of the Expense Reimbursement and Service Award shall be payable immediately upon entry of this Order.  The remaining 50% of the Fee Award shall be payable upon substantial distribution to the Settlement Class upon approval by the Court.

12.    Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

13.    In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

The Clerk of the Court is respectfully directed to close the motion at Dkt. No. 76.

Dated: February 24, 2026
      New York, New York

                                                 LORNA G. SCHOFIELD
                                      UNITED STATES DISTRICT JUDGE

9